2016 IL App (1st) 142754
No. 1-14-2754

FIRST DIVISION
June 20, 2016

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEPPER CONSTRUCTION COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee | ) | Cook County. |
| and Cross-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PALMOLIVE TOWER CONDOMINIUMS, LLC, | ) | |
| ABN AMRO MORTGAGE CORP., INC., | ) | |
| ALZENSTEIN, NEAL, ALMEIDA, JILL F. | ) | |
| ALMEIDA, RICHARD J., AMERICAN | ) | |
| BROKERS CONDUIT, f/k/a AMERICAN HOME | ) | |
| MORTGAGE CO., ANNING-JOHNSON | ) | |
| COMPANY, ANTARES IRON & COPPER, INC., | ) | |
| ASHER BROTHERS COMPANY, INC., ATG | ) | |
| TRUST COMPANY AS TRUSTEE OF T/A | ) | |
| #10261 DATED 7/25/2006, BALLAS, PETER | ) | |
| G., AS TRUSTEE OF THE PETER G. BALLAS | ) | |
| REVOCABLE TRUST DATED 5/23/2003, | ) | |
| BANK OF AMERICA, BANK UNITED FSB, | ) | |
| BARRETT, MARILYN E., BARRY, | ) | |
| MARCELLA, BARRY, ROBERT, BARRY | ) | |
| THOMAS PLUMBING, INC., BARSANTI | ) | |
| WOODWORK CORPORATION, BERGDAHL, | ) | |
| LINDA J., BERGLUND CONSTRUCTION, | ) | |
| BERNHARD WOODWORKS, LTD., BIG | ) | |
| BEAVER & CROOKS, LTD., LLC, BIRKEL, | ) | |
| MARTIN P., BLAZER, JUDITH E. and HENRY | ) | |
| E. FULDNER, AS TRUSTEES OF THE JUDITH | ) | |
| E. BLAZER LIVING TRUST u/a/d 10/21/1996, | ) | |
| BOOTH, LAURENCE, BOOTH, PATRICIA, | ) | |
| BOURBON TILE & MARBLE, INC., BOYSEN, | ) | |
| ROWENA, BREAK THRU ENTERPRISES, INC., | ) | |

BUCKLEY, MORTIMER, BURKARD, JEFFREY, )
BYNOE, LINDA WALKER, BYNOE, PETER, )
CABRERA, MARIA, CALKINS, CATHERINE B.,)
CALKINS III, RUSSELL W., CAMINO )
MODULAR SYSTEMS USA, INC., CAPITOL )
GLASS, CHARLES SCHWAB BANK, CHICAGO)
BANCORP INC., CHICAGO FINANCIAL )
SERVICES, INC., CHICAGO TITLE & TRUST, )
CO., CITIBANK, CITI MORTGAGE, INC., )
COLCO SERVICES, INC., COLE TAYLOR )
BANK, COLUMN FINANCIAL, INC., COMBS, )
MARK E., CONNAUGHTON, JAMES T., )
CONNELLAN, JOHN, COUNTRYWIDE HOME )
LOAN, CREATIVE INDUSTRIES TERRAZZO, )
CUSTOM STAINLESS, DAW, JAMES F., )
DELANEY, MADELEINE, DELEERS )
MILLWORK INC., DELEEUW, DEBRA ANNE )
SYLVAN, DELEEUW, ROBERT, DEMIRJIAN, )
CHARLES, DIMAURO, ALEXANDER, )
DOUGLAS IRON WORKS, INC., DP 159e. )
WALTON, LLC, R.A., DRAPER & KRAMER )
MORTGAGE, EARHART, BARRIE, TRUSTEE )
OF THE BARRIE M. EARHART REVOCABLE )
TRUST DATED 2/24/2003, ELSMAN, CYNTHIA,)
ELSMAN, JR., JAMES L., ELSMAN III, JAMES )
L., ELSMAN, JANICE M., EZTECH )
MANUFACTURING, INC., FEENEY, LOUISE, )
FIRST FRANKLIN, FIRST MIDWEST BANK, )
FLOORING RESOURCES CORP., THE )
GASLIGHT COMPANIES, GEORGES, )
CHRISTOS, GEORGES, MARIA, GEORGIS, )
MARY LOU, GERMONT, JOY, GLAROS, )
WILLIS H., GLICKMAN, ROSS B., GLICKMAN, )
SUZANNE A., GRAND APPLIANCE & TV, )
GRUNBERG, TED, GURTZ ELECTRIC CO., )
HARRIS NA, HAWKINS, JAMES B., HAWKINS,)
MARY PAT, HENKEL, FRANCES C., HENKEL, )
MICHAEL C., HILL MECHANICAL CORP., )
HOURIHANE, KRISTINA K., HOURIHANE, )
PATRICK D., INTERNATIONAL MARBLE & )
GRANITE SUPPLY, INC., J. KAPCHECK & CO., )
JOHN CARETTI & CO., JOHNSTONE, LISA A., )
JOHNSTONE, MICHAEL B., JONES, HERBERT )
A., JONES, KIMBERLY M., JP MORGAN )
CHASE BANK, K7K IRON WORKS, INC., )
KEHOE, THOMAS G., LAFORCE HARDWARE )

& MANUFACTURING, CO./WISCONSIN,        )
GREGORY J. LANDIS AS TRUSTEE OF THE     )
GREGORY J. LANDIS DECLARATION OF        )
TRUST DATED 9/14/1998, LECOQUE, JAY K.,   )
LILIE, HAROLD J., LOEFFLER, KELLY L.,      )
LOOMIS, BRIAN S., LYN-DEN, INC., MAKAM, )
PADMINI S., MAKAM, SATYAPRAKASH N.,      )
MANSON, JULIE N., ARIA MAZER LIVING      )
TRUST DATED 9/23/2005, RICK MAZER         )
LIVING TRUST DATED 9/23/2005, MAZER       )
CONSTRUCTION CO., MCGRATH, KRISTINA,  )
MCGRATH, MICHAEL, MENENDEZ, ALICIA      )
S., MIDWEST WOODWORK & VENEERING,      )
INC., MILLER, SUSAN H., MK INDUSTRIES,     )
INC., MOORE, HELEN, MOORE, WAYNE,        )
MORTGAGE ELECTRONIC REGISTRATION,    )
MURAD, NADIA, MABS INVESTMENTS, LLC, )
R.A., NATIONAL CITY MORTGAGE,             )
NATIONAL ELECTRICAL BENEFIT FUND,       )
NAYER, RAJEEV, NAYER, RITU, NORTHSTAR)
FIRE PROTECTION, MARLA NYBERG            )
DECLARATION OF TRUST DATED 12/1/1998,    )
OAK BROOK BANK, O'CONNELL, CORMAC,     )
PALMOLIVE BUILDING BASE, LLC, PARK       )
NATIONAL BANK, PAPPAS, NICHOLAS J.,       )
PARENTI & RAFAELLI LTD., PEDERSEN,         )
MYRNA E., FRANK S. PERRY AS TRUSTEE      )
OF THE FRANK S. PERRY TRUST DATED         )
1/17/2002, PIMENTEL, GEORGE B., PIMENTEL,)
ZANA, POLIFORM, PRINCE, CYNTHIA,           )
PROCHNOW, DOUGLAS L., RAMPY,              )
RESNICK, NANCY, RESNICK, PHILLIP,           )
ROSEN, BRIAN, ROSS, MARIA, ROSS,             )
RICHARD, ROZRAN, DAWN F., ROZRAN,         )
JACK L., RUBENSTEIN, MARC A., BETH S.      )
RUBIN REVOCABLE TRUST 3/7/2007, INES      )
MORRONI SARDO, TRUSTEE OF THE INES       )
MORRONI SARDO TRUST DATED 12/17/2004, )
SHIMER, ROBERT J., SHOWERWORKS,          )
SHUTTER, JENNIFER M., SHUTTER, JON D.,     )
MARCY SIMON TRUST OF THE MARCY          )
SIMON TRUST DATED 9/19/1999, SPECH,        )
LARRY, SPRECHER, JEFFREY C.,                )
STEVENSON, CHASE, STEVENSON, JOHN,       )
STEWART, JAY S., STEWART, JUDITH D.,        )
STRINGFELLOW, JAMES, THE NORTHERN       )

TRUST COMPANY OF ILLINOIS, THE )
PRIVATE BANK MORTGAGE CO., TIDY )
INTERNATIONAL, TIRAPELLI, RONALD, )
TRAVERS, SUZANNE,TRINITY ROOFING )
SERVICES, INC., THE VAV2005 TRUST )
DATED 8/8/2005, VORWALLER, AVA M., )
VORWALLER, GREGORY S.,WALLACK, )
LEWIS, WASHINGTON MUTUAL BANK, )
WEAVER, AMY J., WEAVER, RICHARD G., )
WELLS FARGO BANK, WEINER, BARBARA )
A., WILLMOT, PETER S., WITTENMYER, )
ERIC,WOODFIELD PLANNING CORP., and )
NON-RECORD CLAIMANTS, )
                )
     Defendants, )
_____ )     07 CH 14994
                )
BOURBON MARBLE, INC., )
                )
     Defendant and Counterplaintiff-Appellant )
     and Cross-Appellee, )
                )
          v. )
                )
PEPPER CONSTRUCTION COMPANY, )
PALMOLIVE TOWER CONDOMINIUMS, LLC, )
ABN AMRO MORTGAGE CORP., LLC, AIR )
PRODUCTS EQUIPMENT COMPANY, )
ASCHER BROTHERS COMPANY, INC., BANK )
OF AMERICA, CAMINO MODULAR SYSTEMS )
USA INC., CONNELLAN, JOHN, DELANEY, )
MADELEINE, DELEERS MILLWORK, INC., )
DRAPER AND KRAMER MORTGAGE, )
FRIEND, HOWARD, FRIEND, LOREN, GOLD )
COAST BANK, JUDSON C. GREEN and JOYCE )
T. GREEN, AS TRUSTEES OF THE GREEN )
FAMILY TRUST DATED 6/28/1993, )
AS RESTATED 11/21/2005, LAFORCE )
HARDWARE AND )
MANUFACTURING/WISCONSIN, LECOQUE, )
JAY K., LOEFFLER, KELLY L., MENENDEZ, )
ALICIA S., MIDWEST WOODWORK & )
VENEERING, INC., NATIONAL CITY )
MORTGAGE, NATIONAL ELECTRIC BENEFIT )
FUND, PALMOLIVE BUILDING BASE, LLC, )
PARENTI & RAFFAELLI LTD., PIMENTEL, )

-4-

No. 1-14-2754

GEORGE B., PIMENTEL, ZANA, PRIVATE )
COMPANY, SHIMER, ROBERT J., SPRECHER, )
JEFFREY C., THE PRIVATE BANK )
MORTGAGE CO., TIRAPELLI, RONALD, )
VORWALLER, GEORGE S., VORWALLER, )
AVA M., WITTENMYER, ERIC, )
WITTENMYER, JILL, UNKNOWN )
NECESSARY, UNKNOWN OWNERS and )
NON-RECORD CLAIMANTS, )
                                                         )
      Counter-Defendants )
                                                         )
(Pepper Construction Company, )
                                                         )
      Counter-Defendant and Cross-Appellant). )     Honorable Lisa R. Curcio,
                                                         )     Judge Presiding.
                                                         )

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves a dispute between the general contractor for a construction project, Pepper Construction Company (Pepper), and one of its subcontractors, Bourbon Marble, Inc. (Bourbon). Beginning in 2004, Pepper and Bourbon worked on an interior build-out of approximately 96 condominium units in a building owned by Palmolive Tower Condominiums, LLC (Palmolive), and located at 919 North Michigan Avenue in Chicago. At one point, disputes arose and in March 2007, Pepper filed a demand for arbitration against Palmolive. The arbitration proceedings involved Palmolive, Pepper, and Bourbon, along with several other subcontractors of Pepper. The arbitration award was confirmed in the circuit court, and following a global settlement agreement, only issues between Pepper and Bourbon remained. Bourbon attempted to pursue damages against Pepper, but Pepper successfully contended at the summary judgment stage that Bourbon was judicially estopped from pursuing those damages. The

remaining issues were resolved at a bench trial, where Pepper was awarded $36,312 in backcharges.

¶ 2     Both parties appeal. Bourbon asserts that: (1) judicial estoppel should have applied to Pepper, but not Bourbon; (2) the judicial estoppel ruling should be reversed because the court misapplied the rules pertaining to judicial admissions; (3) the trial judgment should be reversed because the trial court failed to enforce Pepper's judicial admissions; and (4) the trial court improperly denied Bourbon's petition for attorney fees. For its part, Pepper: (1) maintains that Bourbon's claims were barred by judicial estoppel, *res judicata*, collateral estoppel, and an agreement between the parties; and (2) asserts that the court improperly granted a directed verdict at trial to Bourbon; and (3) Pepper was the prevailing party and entitled to attorney fees.

¶ 3                                  I. BACKGROUND

¶ 4                            A. Arbitration Proceedings

¶ 5     We first summarize the arbitration proceedings. In its demand and amended demand for arbitration, Pepper asserted that due to certain actions taken by Palmolive, Pepper had incurred significant cost increases and damages. Among other acts, Pepper asserted that Palmolive released construction drawings out of sequence and behind schedule, issued numerous drawing revisions during construction that affected almost every trade on the project, and breached the change order process, which deprived Pepper and its subcontractors of working capital. Pepper also stated that several subcontractors with outstanding claims were joining Pepper in the arbitration proceeding against Palmolive. In response, Palmolive stated that Pepper was responsible for significant delays and had failed to properly manage the work on the project.

¶ 6     Previously, Pepper had entered into a joint interest and liquidating agreement (JILA) with some of its subcontractors. The JILA was signed by the president of Bourbon Tile & Marble,

Inc., among other subcontractor entities.[1] The JILA stated that the damages and losses suffered by Pepper and the subcontractors were "overwhelmingly caused" by Palmolive and any backcharges Pepper and the subcontractors had against each other were "incidental to and not capable of being calculated until resolution of [Palmolive's] liability is determined by an award in arbitration or settlement of this matter." The JILA further provided that Pepper and the subcontractors recognized their "common interest in their dispute" with Palmolive and "the mutual benefit of pursuing these interests jointly," which included "providing a coordinated and joint strategy in the Arbitration." Under the JILA, each subcontractor agreed to accept as its "sole and exclusive compensation for its Subcontractor Claim as part of the Arbitration Proceeding, the amount negotiated by it in settlement or as determined by the Arbitrators to be due and owing each Subcontractor from [Palmolive], [Pepper,] and/or each other with the exception of any backcharges or other open issues between and among [Pepper] and the Subcontractors."

¶ 7    According to the JILA, Pepper and the subcontractors agreed that the most efficient and cost effective way to recover amounts due from Palmolive was to present the subcontractors' claims as part of Pepper's claim in the arbitration. Under this arrangement, the subcontractors would "accept full responsibility for the presentation of evidence in support of their claims." Moreover, each subcontractor was responsible for proving its entitlement and the quantification of its claim. Pepper agreed not to settle claims against Palmolive that related to or impacted a subcontractor's claims without the participation and express advance written authorization from the subcontractor at issue.

---

[1]The precise relationship between Bourbon Tile & Marble, Inc., and Bourbon is unresolved. We use both names interchangeably for the purposes of the arbitration proceedings except where specified, but we do not take a position on the entities' relationship.

¶ 8    The JILA further provided that it was binding on Pepper and the subcontractors, as well as their "partners, affiliates, agents, representatives, servants, attorneys, employees, shareholders, directors, officers, subsidiaries, heirs, decedents, executors, successors, and assigns." Attachment A to the JILA, entitled "Subcontractors' Claims," was blank.

¶ 9    On February 12, 2008, Palmolive sent a status letter to the arbitration panel. In this letter, Palmolive noted that it sought approximately $50 million in damages and Pepper sought over $36 million in damages. Palmolive further stated that it was concerned with how Pepper planned to present the claims of the subcontractors. According to Palmolive, Pepper appeared to be taking the position that each subcontractor was a separate party with rights in the arbitration.

¶ 10    On February 15, 2008, in a discovery and supplemental scheduling order, the arbitrators addressed the subcontractors' participation. The arbitrators recalled that Pepper requested that the subcontractors be permitted to attend and participate in depositions and the arbitration hearing. The arbitrators allowed a representative of each interested subcontractor and/or its attorney to attend depositions, but they were not permitted to ask questions. The arbitrators noted that they did not want the scheduling of depositions to be delayed to accommodate the subcontractors and/or their attorneys. Additionally, the arbitrators stated that only attorneys of record for Pepper and Palmolive would be permitted to ask questions and present evidence at the arbitration hearing, but allowed Pepper to "expand its attorneys of record as it sees fit."

¶ 11    Arbitration hearings took place over 90 days between October 28, 2008, and December 17, 2009, and generated more than 25,700 pages of transcript. The parties presented 35 witnesses and offered more than 2000 exhibits. Pepper apparently indicated to the arbitrators that Bourbon had suffered $3,185,234 in damages, with $55,031 deducted for backcharges. David Lloyd, who is counsel for Bourbon on appeal, examined two witnesses at the arbitration hearing−Lynn

Kuriniec, the project accountant for Bourbon Tile & Marble, Inc., and Bourbon, and Tucker Elliott, whose firm was retained by Bourbon to quantify its losses. Before Kuriniec's testimony, Pepper's counsel stated that Lloyd was "counsel for Bourbon Tile and Marble" and "will be conducting the examination and is representing Pepper Construction Company for the limited purposes of presenting Bourbon's claim under the joint interest and liquidating agreement." Prior to examining Elliott, Lloyd stated that he was "appearing here today pursuant to the terms of the joint liquidated agreement and representing at least that portion of the claim for Bourbon Marble and its subsidiary Bourbon Tile and Marble in this matter." In part, Elliott testified that he had not analyzed how much of the damage claim was either Pepper's or Palmolive's responsibility. Lloyd also cross-examined Alan Nagorzanski, who was Palmolive's expert.

¶ 12    At the end of the proceedings, the arbitrators issued an interim award, a second interim award, and a final award. We summarize each. In the interim award, the arbitrators found they had jurisdiction over the claims submitted by Pepper, including the elements relating to Pepper's subcontractors and Palmolive's counterclaims. The arbitrators further stated that pursuant to *Paschen Contractors, Inc. v. City of Kankakee*, 353 Ill. App. 3d 628 (2004), a general contractor is permitted to sustain a cause of action in its name for work done under a contract when it solicits a subcontractor to actually perform the work. According to the arbitrators, Illinois law allows pass-through claims even where the contractor has not fully settled the subcontractors' claims. The arbitrators further found that conditional liability, as expressed in a subcontract, liquidating agreement, or "some other type of claims-presentment arrangement," is sufficient to prove liability, even when the agreement provides that the contractor has no obligation to pay the subcontractor unless and until it recovers from the owner. The arbitrators stated that the JILA complied with "applicable requirements." Additionally, the arbitrators noted that Palmolive's

status letter had raised concerns about hearing procedures and how Pepper intended to present its pass-through claims, but Palmolive had not objected to the arbitrators' jurisdiction to hear the pass-through claims.

¶ 13    At the same time, the arbitrators rejected the allegation that the subcontractors were allowed to participate in the arbitration as separate and independent parties. The arbitrators stated that the February 15, 2008, order established that the subcontractors "are not separate parties to the arbitration, and that their legal counsel, to the extent of their participation in the hearings, are simply serving as cocounsel to Pepper for the limited purpose of assisting Pepper with the presentation of the subcontractor's pass through claims."

¶ 14    As to damages, the arbitrators determined that Palmolive materially breached its contract with Pepper and awarded Pepper damages in the amount of $22,781,511. Pepper's damages were summarized as follows:

| Item | Award |
|---|---|
| Pepper Construction Company's Damages (as General Contract and for Self-Performed Work) | $13,667,499 |
| Drywall (Anning John's Cost of the Work) | $488,049 |
| Painting (Ascher Brothers' Cost of the Work) | $515,022 |
| Stone & Tile (Bourbon Tile & Marble's Cost of the Work) | $780,649 |
| Mechanical (Hill Mechanical's Cost of the Work) | $823,616 |
| Wood Flooring (Lyn-Den's Cost of the Work) | $2,722,319 |
| Woodworking (Midwest Woodwork & Veneering's Cost of the Work) | $665,299 |
| Total Award to Pepper (Before Interest) | $19,662,453 |
| Interest at Statutory Rate of 5% per annum from December 1, 2006, to February 1, 2010 | $3,119,058 |
| Total Award to Pepper Including Interest | $22,781,511 |

The award also included a more detailed itemization of the approximately $13 million in damages awarded to Pepper as general contractor, which listed a deduction of $693,982 for backcharges. A footnote stated that "[p]ursuant to the [JILA], the Panel has not attempted to

allocate these backcharges among Pepper, Pepper Self-Perform Group, and the Pass-Through Subcontractors, since the Panel lacks jurisdiction to determine disputes between them."

¶ 15    The itemization also broke down the damages for "Stone & Tile (Bourbon Tile & Marble's Cost of the Work)":

| | |
|---|---|
| Contract Balance | $193,843 |
| Pending Changes | $601,589 |
| Changed Conditions (Productivity Loss) | 0 |
| Other Additional Costs (Financing) | 0 |
| Less: Adjustment | ($14,783) |
| Total Award to Pepper for Stone & Tile (Bourbon Tile & Marble) | $780,649 |

The arbitrators also awarded $434,864 in damages to Palmolive based on a finding that Pepper's installation of stone shower floors was defective.

¶ 16    In the second interim award, the arbitrators determined that Pepper was the prevailing party and ordered Pepper to file a motion for attorney fees and costs. In the final award, which incorporated the first and second interim awards, the arbitrators stated that the attorney fees and costs claimed by Pepper were reasonable and appropriate. The arbitrators further stated that they agreed with the following portion of a declaration written by Lloyd about Bourbon's fees:

> "Bourbon is not now and never has been a party in the arbitration. It has no claims pending before the arbitrators for their adjudication. Counsel for Bourbon only appeared in the hearing and participated in the arbitration in the capacity of assisting Pepper Construction Company with the presentation of a *portion* of Pepper Construction Company's claims which related to Bourbon's work at the premises of the Palmolive Building. For example, Bourbon's counsel only appeared as a 'special counsel for Pepper' and never as counsel for Bourbon, itself. As one might expect, had Bourbon appeared as a party in the arbitration, the presentation of proof on its behalf would have been significantly different than

what was presented on behalf of Pepper Construction. Moreover, Bourbon has other claims relating to the Project that were not presented in the arbitration and is also facing claims relating to the Project that were not presented in the arbitration." (Emphasis in original.)

Ultimately, with attorney fees and costs, the arbitrators awarded Pepper $33,843,668.17.

¶ 17                                B. Circuit Court Proceedings

¶ 18    On April 19, 2010, Pepper moved to confirm the award in the circuit court of Cook County. Subsequently, Palmolive filed a motion to vacate the award, contending in part that the panel exceeded its authority and jurisdiction by allowing the subcontractors to participate in the arbitration and present claims against Palmolive even though the subcontractors did not have a contract or arbitration agreement with Palmolive.

¶ 19    Responding to Palmolive's motion to vacate, Pepper cited *Paschen Contractors, Inc.*, 353 Ill. App. 3d 628, and asserted that the arbitrators had jurisdiction over all of Pepper's claims, including the portion of Pepper's damages that came from the subcontractors' work. Bourbon also filed a response to Palmolive's motion to vacate the award. According to Bourbon, the arbitrators had provided that "the subcontractors were no more parties to the Arbitration than any random witness might be who happens to stop by and watch these proceedings in open court."

¶ 20    On October 1, 2010, the circuit court entered an order confirming the award. The court found that Palmolive had waived the issue of whether the claims were arbitrable, but stated that even if Palmolive had preserved the issue, the arbitrators properly determined they had jurisdiction over the subcontractors' claims. A final judgment was entered on October 22, 2010, in favor of Pepper in the amount of $35,234,786.59, and in favor of Palmolive in the amount of $450,372.08. Both amounts included interest that had accrued. The order included a finding

pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that the order was final and there was no just reason to delay enforcement or appeal.

¶ 21    Palmolive subsequently appealed, but the appeal was dismissed after Pepper, Palmolive, and several entities−though not Bourbon−entered into a global settlement agreement in March 2012. Pursuant to this agreement, Pepper and Palmolive settled all of their claims against each other and Pepper was paid approximately $21 million. Also in March 2012, Bourbon and Pepper entered into an agreement and partial release, in which Bourbon agreed to dismiss with prejudice all claims against all other parties except Pepper, and Pepper agreed to pay Bourbon $850,000.

¶ 22    All that remained of the Palmolive litigation, then, were disputes between Bourbon and Pepper. Bourbon pursued a breach of contract claim against Pepper via a second amended counterclaim. Bourbon alleged that Pepper asked Bourbon to perform additional work outside the scope of the subcontract because of damage to Bourbon's work by other trades, changes in the plans and specifications, materials improperly specified by the owner, and changes in the scheduling of the order in which work was to be performed, among other factors. Bourbon further alleged that certain actions taken by Pepper obstructed and negatively impacted Bourbon's ability to timely complete the project at the original contract price. Bourbon contended that after allowing for all just credits, deductions, and setoffs, Pepper owed Bourbon more than $3 million.

¶ 23    Pepper filed an answer and asserted affirmative defenses and a counterclaim. Pepper asserted in part that it was entitled to set off any balances that became due to Bourbon with all costs that Pepper had incurred, including $55,031 in backcharges for completing or reworking Bourbon's work. Pepper also stated that it was entitled to set off the amount of damages awarded to Palmolive in arbitration due to Bourbon's defective installation of the shower floors.

¶ 24 The record includes Pepper's subcontract agreement with Bourbon. In relevant part, article 18 of the subcontract provided that if Bourbon "fail[s] in any manner to perform its Work properly or default in the performance of any provision of this Subcontract ," Pepper had remedies at its disposal, including terminating the contract and having Bourbon pay its damages. Article 18 also stated that:

> "In the event of such a breach, in addition to any other remedy PEPPER may have, [Bourbon] agrees to indemnify, defend, and hold PEPPER harmless from all losses, damages, expenses, (including attorneys' fees) as well as any judgments suffered by PEPPER as a result of [Bourbon's] acts or omissions in the performance of its Work. PEPPER shall have the right of set off and to deduct from any balance due under this Subcontract Agreement or any other accounts of subcontracts under which PEPPER is holding funds due [Bourbon], the amount of any losses, damages, or expenses as described above."

¶ 25 On April 19, 2012, Bourbon filed a set of Rule 216 requests to admit (Ill. S. Ct. R. 216 (eff. Jan. 1, 2011)), and Pepper responded accordingly. In requests 9, 10, 11, and 12, Pepper admitted that it made certain statements in its demand and amended demand for arbitration. Request 13 asked Pepper whether those statements "are factually accurate, true, and correct," and Pepper responded: "Admitted that at the time the statements set forth in [those requests] were made, Pepper believed them to be factually accurate, true, and correct." In requests 14, 15, 16, 17, and 18, Bourbon presented a set of statements Pepper had made in its legal brief in the arbitration. One of the statements, reproduced in request 18, was as follows:

" 'Finally, the Panel has asked to what extent the Panel has jurisdiction to rule on the issues between Pepper and its Pass Through Subcontractors. Such issues are not before the Panel, nor has Pepper proffered any evidence regarding any such issues. The Panel only has jurisdiction to determine issues between Pepper and Palmolive.' "

Pepper admitted that it made the statements, but when asked in request 19 whether the statements in the legal brief "are accurate, true, and correct," Pepper again responded: "Admitted that at the time the statements set forth in [those requests] were made, Pepper believed them to be factually accurate, true, and correct."

¶ 26    Also at issue in this appeal is request 20 and Pepper's response, which state:

"In Exhibit A attached to Pepper Construction Company's Legal Brief (dated on or about December 14, 2009) in the Arbitration, Pepper claimed it was entitled to an arbitration award which included $2,295,620 for Boubon's 'Specific Losses', $532,649 for Bourbon's 'Changed Conditions', $162,617 for Bourbon's 'Other Additional Costs', and $264,162 for 'Pre-Judgment Interest' which, after deductions for backcharges and adjustments, totaled $3,185,234.

RESPONSE: It is admitted only that Pepper claimed that it was entitled to an arbitration award, which included Bourbon's Pass Through Claim under and subject to the terms of the Joint Interest and Liquidating Agreement, which consisted of $2,295,620 for Bourbon's 'Specific Losses', $532,649 for Bourbon's 'Changed Conditions', $162,617 for Bourbon's 'Other Additional Costs', and $264,162 for 'Pre-Judgment

Interest' which, after deductions for backcharges ($55,031) and adjustments ($14,783), totaled $3,185,234. All remaining allegations are denied."

¶ 27    Bourbon filed a motion to strike certain responses to its requests to admit. In part, Bourbon contended that Pepper responded evasively when it stated that it "believed" statements made to the arbitrators were true "at the time they were made." (Emphasis omitted.) Bourbon asserted that as a result, Pepper indicated that its factual statements before the arbitrators were untrue for the purposes of the current litigation, and so improperly reserved the option for Pepper to repudiate its prior factual claims to suit its needs. The court denied the motion to strike on June 14, 2012. The record does not contain a transcript for this proceeding.

¶ 28    Bourbon and Pepper subsequently filed a total of six motions for summary judgment. In its motions, Bourbon asserted the doctrine of judicial estoppel. Bourbon contended that as a result of the arbitration, Pepper had admitted liability and a minimal amount owed, and could not assert otherwise in the current litigation.

¶ 29    Bourbon also asserted that Pepper did not have a right to a set-off. Bourbon contended that at arbitration, Pepper had unilaterally deducted $55,031 from its claim relating to Bourbon. Bourbon additionally stated that Pepper either waived or was estopped from asserting a right to a set-off because Pepper had voluntarily and unilaterally assumed control over the administration and litigation of the shower floor issue at arbitration, regardless of any warranty or indemnification provisions in the subcontract. Attached to this motion for summary judgment was a declaration by certification of Lloyd, who was Bourbon's counsel, and e-mails that Lloyd had exchanged or received from Pepper's counsel about the shower floors and other issues.

According to Lloyd, these e-mails revealed that Pepper had been in "complete and exclusive control of the litigation/arbitration."

¶ 30    Additionally, Bourbon asserted that the JILA was a nullity. Bourbon stated that the JILA was missing critical terms because it did not include the amount each signatory was owed, which was supposed to be listed in blank attachment A. Bourbon also stated that the JILA was not signed by the correct parties because it was signed by Bourbon Tile & Marble, Inc., instead of Bourbon. Bourbon further asserted that the JILA could not have been implemented as a result of the arbitrators' February 2008 order. Additionally, Bourbon referred to e-mails that demonstrated that Pepper "unilaterally conducted the arbitration, ignoring any participatory rights the JILA was created to provide the Subcontractors."

¶ 31    Turning to Pepper's motions for partial summary judgment, Pepper asserted judicial estoppel against Bourbon. Pepper contended that at arbitration, Bourbon repeatedly asserted that Palmolive was the cause of Bourbon's damages. Pepper stated that Bourbon could not now allege that Pepper's breach or abandonment of the subcontract was the direct and proximate cause of the same damages. Pepper also noted that in *MB Financial Bank, N.A. v. Patel*, No. 19 C 6566, 2012 U.S. Dist. LEXIS 12118 (N.D. Ill. Feb. 1, 2012), judicial estoppel had been applied against someone who was not a party in the prior proceeding. Additionally, Pepper asserted that Bourbon was judicially estopped from repudiating the JILA and from asserting that the JILA was executed by the wrong entity. Pepper maintained that Bourbon had represented throughout arbitration that Bourbon was operating under the JILA and that Bourbon had asserted a single claim in arbitration for Bourbon Tile & Marble, Inc., and Bourbon. In response to Bourbon's attempt to invoke judicial estoppel, Pepper denied that it had admitted liability for the amount of the pass-through claim and stated that it had not endorsed the claim as accurate.

¶ 32    Pepper further contended that Bourbon's claims were barred by *res judicata* and collateral estoppel. Pepper asserted that Bourbon sought to recover the same damages that it had previously asserted against Palmolive. According to Pepper, Bourbon's claims at arbitration and its current claims were a single cause of action, and the claims in both proceedings arose out of the same contract and project. Pepper also asserted that Bourbon had been in privity with Pepper at arbitration and that Bourbon's interests had been adequately represented. Pepper stated that Bourbon had prepared its own claims, presented its witnesses as cocounsel for Pepper, and participated in the planning and defense of its claims.

¶ 33    After a hearing, the court issued two written orders to address the parties' motions for partial summary judgment. The first order, which was entered on January 15, 2013, addressed judicial estoppel, *res judicata*, and collateral estoppel. The court found that Bourbon was judicially estopped from asserting that Pepper was liable for the same damages that Bourbon presented at arbitration as having been caused by Palmolive. The court noted that in *MB Financial Bank, N.A.*, No. 19 C 6566, 2012 U.S. Dist. LEXIS 12118 (N.D. Ill. Feb. 1, 2012), judicial estoppel had been applied to a defendant who was not a party to the prior proceeding. The court stated that to allow Bourbon to pursue its claim "is exactly the conduct intended to be addressed by *** judicial estoppel." At the same time, the court declined to find that Bourbon was judicially estopped from repudiating the JILA or asserting that the JILA was void. The court stated that the arbitrators did not base any findings on the existence of the JILA or whether the JILA governed the relationship between Pepper and its subcontractors.

¶ 34    As to the other preclusion arguments, the court found that the arbitration constituted a final judgment on the merits. However, the court also found that the proceedings did not involve the same cause of action for purposes of *res judicata*, and therefore that doctrine did not apply.

The court stated that Bourbon's claim in the circuit court was entirely based on Pepper's breach of the subcontract, which was the most critical factual component in the current litigation, but was absent from the arbitration. The court further found that Bourbon's claims were barred by collateral estoppel. The court stated that the same damages that Bourbon sought from Pepper were asserted by Pepper in the arbitration and that the damages claimed for Bourbon's work had a full hearing.

¶ 35   In a subsequent written order, the court addressed the other issues raised in the motions for partial summary judgment. The court denied summary judgment on the issue of whether Pepper was entitled to assert a set-off and stated that there were genuine issues of material fact about whether Bourbon's claims were barred or limited by the JILA. The court found there was no evidence of the legal relationship between the Bourbon entities and there was a genuine issue of material fact about whether Bourbon was bound by the JILA.

¶ 36   Bourbon filed motions to reconsider. At a hearing on February 22, 2013, Bourbon challenged the court's ruling that its claims were barred by collateral estoppel. Citing *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992), Bourbon asserted that the court should distinguish between a situation where codefendants sue a plaintiff or are sued by a plaintiff, and situations where there are claims between the codefendants themselves. On March 29, 2013, the court granted Bourbon's motion to reconsider its collateral estoppel ruling. The court stated that it had misapplied the law in finding that Bourbon was collaterally estopped.

¶ 37   Also sometime after the summary judgment rulings, Bourbon filed a motion to reconsider the court's June 14, 2012, ruling that denied Bourbon's motion to strike certain of Pepper's responses to the requests to admit. [2] Bourbon asserted that by allowing Pepper to evade Illinois

---

[2]The date this motion was file-stamped is illegible. Bourbon states in its appendix to its brief that the motion was filed on April 18, 2013.

Supreme Court Rule 216 (eff. Jan. 1, 2011) and avoid acknowledging whether Pepper had been truthful during the arbitration, the court's ruling had enabled Pepper to abandon the claims it asserted in the arbitration filings and pursue an alternative position in the current litigation.

¶ 38    On May 15, 2013, the court granted Bourbon's motion to reconsider and stated that requests 13 and 19 were admitted. The court stated that it did not "see how you can do anything other than admit that they were true, because they were either true then *** and you put them forth as true *** or not."

¶ 39    At a proceeding on June 27, 2013, Bourbon stated that it did not have damages "other than the damages that we claim both Pepper and Palmolive are responsible for." Bourbon also acknowledged that its claims were not available based on the judicial estoppel ruling.

¶ 40    The matter proceeded to a bench trial on Pepper's claims, including a counterclaim for the approximately $450,000 shower floor judgment awarded to Palmolive at arbitration and $55,031 in backcharges. Before trial, Bourbon filed a motion *in limine* to enforce Pepper's Rule 216 admissions. According to Bourbon, Pepper judicially admitted that it had already assessed the backcharges to Bourbon at arbitration. Bourbon further asserted that Pepper sought to recoup an overpayment for Bourbon's work, but Pepper had judicially admitted that it believed Bourbon was entitled to receive $3,184,234 for that same work.[3] In response, Pepper stated that although it submitted Bourbon's pass-through claim to the arbitrators, Pepper had not stated that it agreed with Bourbon's calculation of the value of its work. Pepper also asserted that although it had deducted backcharges from Bourbon's pass-through claim, the arbitrators determined that they did not have jurisdiction to adjudicate those claims, and therefore the award did not account for the backcharges.

---

[3]We presume this is a typographical error because the relevant figure in the requests to admit is $3,185,234.

¶ 41     The court denied Bourbon's motion *in limine*. The court stated that Bourbon's motion asked it to "interpret the meaning of these admissions in the broad context of the case," which it would not do. The court further stated that it did not know "exactly how these are going to come into play in the course of the trial, but the admissions are the admissions, and the Court will have to consider those as evidence if and when it's appropriate." The court declined to enter a blanket order and stated it would "have to see how it comes up."

¶ 42     The trial began on November 5, 2013. In its opening statement, Pepper stated that it wanted the court to: (1) apply the JILA, find that it was binding, and find that Pepper did not breach it; (2) assess the shower floor judgment and damages for Bourbon's defective shower floor installation; (3) confirm and assess the backcharges that Pepper assessed to Bourbon over the course of the job; and (4) determine what Pepper owed Bourbon "in the wake of the job and the arbitration result" and enter a judgment to return overpaid funds. In its opening statement, Bourbon maintained that Pepper judicially admitted that in the arbitration, and contrary to the JILA's terms, Pepper deducted backcharges from the amount that was submitted to the arbitrators for adjudication. Bourbon stated that accordingly, Pepper had already been paid for the backcharges. Bourbon also asserted that Pepper did not suffer damages related to the shower floors because Pepper never paid that judgment.

¶ 43     Pepper's first witness was Brian Peter, Pepper's senior project manager for the Palmolive project. In part, Peter testified about Bourbon's installation of the shower floors and stated that he observed that some units' shower floors were stained. Peter also described Pepper's system for collecting and charging backcharges to the appropriate subcontractors. When Peter was asked whether Bourbon had been assessed backcharges, Bourbon's counsel objected, stating that the question of how backcharges were calculated was moot because Pepper admitted it had already

deducted them. In response, Pepper's counsel admitted that it had unilaterally deducted backcharges before submitting the final form of the award to the arbitrators, but stated that the arbitrators subtracted all of the backcharges from Pepper's award so that Palmolive's liability to Pepper was reduced by the amount that Pepper acknowledged had to be backcharged to Bourbon and other subcontractors. Ultimately, the court allowed Pepper to prove its entitlement to $55,031 in backcharges.

¶ 44    Pepper's next witness, Wendy Klein Keane, was one of Pepper's attorneys at arbitration. Keane testified that Pepper never admitted that it was liable for any of the elements of Bourbon's claim at arbitration. After Keane was asked whether Pepper ever adopted Bourbon's pass-through damages claim, Bourbon's counsel objected on the basis that "this is subject to [the] request to admit" and that requests 18 and 20 addressed the matter. The court overruled the objection. The court found that Pepper was not contradicting the admission in the request to admit, and stated that Bourbon and the court had different interpretations of the effect of the admission.

¶ 45    On cross-examination, Keane testified that for Pepper's settlement with Palmolive, the proceeds came from Palmolive's title indemnity account and another escrow account with Chicago Title and Trust. When asked whether there was any indication in the agreement that Pepper paid Palmolive any money, Keane stated that "Pepper did not cut a check to Palmolive, no." Keane was also asked whether there were any side agreements to the global settlement agreement, to which Keane responded that she was only aware of the global settlement agreement and that Palmolive gave up its judgment against Pepper when the parties signed the agreement.

¶ 46    After Pepper rested, Bourbon moved for a directed verdict on the issue of the shower floor damages. Bourbon's counsel contended that to have a claim for damages, Pepper must have paid money, but there was no indication that occurred. Bourbon's counsel noted that Keane testified that Pepper did not pay Palmolive anything in the global settlement agreement. Bourbon's counsel further stated that "[t]here is simply no evidence in the record today to show that anything was given, tangible or intangible, in regard to the [global settlement agreement], in regard to the [$]450,000." Bourbon's counsel also contended that Palmolive waived the claim for the shower floors and did not assign the claim to Pepper.

¶ 47    In response, Pepper's counsel stated that according to the evidence, Pepper gave up $10 million to reach the settlement, "part of which was the release of the shower floor judgment." Pepper's counsel further contended that Bourbon was not entitled under the subcontract to recover its contract price when there was evidence that Bourbon failed to perform its work in a workmanlike manner and that the work was replaced. The court reserved ruling on Bourbon's motion, and the trial continued.

¶ 48    Bourbon's counsel, Lloyd, testified for Bourbon. Lloyd testified about the JILA, the global settlement agreement, the agreement and partial release between Bourbon and Pepper, circumstances related to defending the shower floors claim at arbitration, and the extent of Bourbon's participation in the arbitration, among other topics. Bourbon also called as witnesses Edward Bourbon, who worked for Bourbon on the Palmolive project, and Bourbon president Lawrence Bourbon. Both testified in part about matters related to the shower floors.

¶ 49    After the close of testimony, the parties submitted written closing arguments. In its closing argument, Bourbon contended in part that Pepper did not have any enforceable rights against Bourbon pursuant to the JILA. Bourbon also asserted that Pepper had no basis for

assessing the shower floor damages or the backcharges. Bourbon maintained that Pepper's claim for backcharges was already reflected in the total deduction for backcharges in the interim arbitration award, and that Pepper was requesting a double recovery.

¶ 50    In its closing argument, Pepper contended in part that Bourbon was bound by the JILA. Pepper further asserted that it had suffered a real loss from the shower floors judgment. Pepper stated that at the outset of negotiations for the settlement, Palmolive received a dollar-for-dollar credit for the shower floors judgment because that amount was deducted from the award in Pepper's favor. Pepper additionally stated that under the subcontract, Bourbon was obligated to hold Pepper harmless from and against the loss Pepper suffered in the form of a reduced recovery from Palmolive. As for the backcharges, Pepper contended that the arbitrators reduced Pepper's recovery by the amount of the backcharges attributed to all the subcontractors, and left it to Pepper and the subcontractors to sort out the backcharges.

¶ 51    The court entered a written memorandum opinion and order on March 17, 2014. The court first granted Bourbon's motion for a directed finding on Pepper's claim for the shower floor judgment. The court found that Pepper had failed to make a *prima facie* case that it was entitled to damages. Assessing Pepper's contention that the shower floor judgment factored into the settlement with Palmolive, the court noted that none of Pepper's witnesses in its case-in-chief had been involved in negotiating the global settlement agreement, and that the only evidence before the court was the agreement itself. The court found that the global settlement agreement was clear and unambiguous and stated that if the parties had intended that part of the consideration for the settlement would be Pepper's ability to proceed with the shower floor claims against Bourbon, provisions could have been made to that effect. The court also declined to infer that Pepper suffered a loss for the approximately $450,000 judgment based on the

disparity between the approximately $35 million judgment and less than $22 million settlement. The court noted that parties negotiate settlements for many reasons. Considering the other factors at play in settlement and the unambiguous terms of the global settlement agreement, the court stated that it would be speculating if it inferred that "the mere difference between the judgment and the settlement amounts meant that Pepper, in effect, paid the judgment to Palmolive."

¶ 52    The court awarded Pepper some of its requested backcharges. The court examined documents from the arbitration and found that, while the arbitrators did not deduct backcharges from the award for Bourbon's work, they deducted $693,982 from Pepper's claim for damages as the general contractor. Turning to other exhibits and testimony presented at trial, the court found that Pepper had proven its entitlement to two out of three categories of backcharges, resulting in a finding that Pepper was entitled to $36,312 out of a requested $55,031.

¶ 53    Turning to the JILA, the court noted that much of the testimony and evidence related to the JILA was adduced because of the shower floors issue. The court stated that because it determined that Pepper could not recover for the shower floors judgment, "the Court need not consider the effect of the JILA and Pepper's conduct with regard to the claim as presented at Arbitration, and the Court does not rule on issues related to Bourbon Marble's obligations under the JILA."

¶ 54    However, the court addressed a defense Bourbon had raised that Pepper could not recover under the subcontract because it waived its remedies by executing the " 'alleged' " JILA. The court stated that "[w]hile it is interesting to contemplate how Pepper could waive remedies by executing a document [to] which the party against whom the remedy is sought denies being a party ***, the Court will not dwell on this question." The court went on to find that certain

provisions in the JILA showed that Pepper had not waived its rights to pursue its claim for backcharges under the subcontract.

¶ 55    Ultimately, the court entered judgment for Bourbon on Pepper's claim for the shower floors judgment. The court also concluded that Pepper proved that Bourbon breached the subcontract and that Pepper was entitled to $36,312 in damages. The court reserved ruling on any claim for attorney fees.

¶ 56    Subsequently, on April 11, 2014, Bourbon filed a petition for an award of fees and costs and asserted that it was the prevailing party. Bourbon stated that the court's award of $36,312 represented less than 5% of what Pepper had sought at trial. Pepper filed a response and cross-petitioned for an order finding that Pepper was the prevailing party. In part, Pepper contended that it was the only party that recovered anything, as it recovered $36,312 and Bourbon recovered nothing from its $3 million claim. Pepper also filed a motion for an order clarifying and/or supplementing the order entered after trial. In part, Pepper requested that the court decide whether the JILA was valid and enforceable against Bourbon. Pepper also requested that the court enter judgment in its favor on the claims in Bourbon's second amended counterclaim.

¶ 57    At a hearing on July 17, 2014, the court provided in an order that judgment was entered in favor of Pepper and against Bourbon on Bourbon's second amended counterclaim. The court also clarified that it found that Pepper could not recover against Bourbon for the shower floors and that it had entered judgment in favor of Bourbon and against Pepper on the shower floors claim. The court denied the rest of Pepper's motion for clarification.

¶ 58    On July 31, 2014, the court denied both parties' petitions related to fees. Citing *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1035 (1999), the court noted that where both parties in a matter have won and lost claims, a court may consider the

litigation a draw and refuse to characterize either party as the prevailing party. Both parties subsequently appealed.

¶ 59                                II. ANALYSIS

¶ 60                              A. Judicial Estoppel

¶ 61    On appeal, both parties address judicial estoppel. Bourbon asserts that the court erred in applying judicial estoppel to it based on an arbitration proceeding that was exclusively between Pepper and Palmolive. Bourbon contends that it was not a party to the arbitration, did not take factually inconsistent positions at arbitration and in the circuit court, and neither succeeded at arbitration nor received any benefit from it. According to Bourbon, the court should have applied judicial estoppel to Pepper. Bourbon contends that Pepper made factual claims at arbitration that established that Pepper was liable for Bourbon's work, but in the circuit court, Pepper contested Bourbon's entitlement to the same amounts that Pepper had sought for itself at arbitration.

¶ 62    Pepper, meanwhile, asserts that the trial court correctly applied judicial estoppel to bar Bourbon from asserting that Pepper caused the same damages that Bourbon claimed at arbitration were caused by Palmolive. Additionally, Pepper argues that it never made inconsistent claims about Bourbon's damages and never admitted it was liable for Bourbon's claim at arbitration.

¶ 63    The court's judicial estoppel ruling was entered pursuant to motions for partial summary judgment. "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a grant of summary judgment *de novo*. *Id.*

¶ 64    The doctrine of judicial estoppel provides that a party who asserts a particular position in a legal proceeding is estopped from asserting a contrary position in a subsequent legal proceeding. *Coleman v. Retirement Board of Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 380, 387 (2009). Judicial estoppel aims to protect the integrity of the judicial system, not necessarily the litigants. *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶ 19. To invoke the doctrine, the party to be estopped must have: (1) taken two positions; (2) that are factually inconsistent; (3) in separate judicial or quasi-judicial administrative proceedings; (4) intending the trier of fact to accept the truth of the facts alleged; and (5) have succeeded in the first proceeding and received some benefit from it. *Seymour v. Collins*, 2015 IL 118432, ¶ 37. Additionally, judicial estoppel must be proved by clear and convincing evidence. *Id*. ¶ 39. Courts have warned that the doctrine of judicial estoppel is an extraordinary doctrine that should be applied with caution because it "precludes a contradictory position without examining the truth of either statement." (Internal quotation marks omitted.) *Moy v. Ng*, 371 Ill. App. 3d 957, 964 (2007).

¶ 65    The parties disagree over the standard of review for a judicial estoppel ruling, with Pepper asserting we should review for an abuse of discretion and Bourbon stating that our review should be *de novo*. Our supreme court has stated that where a trial court has exercised its discretion in applying judicial estoppel, we review for an abuse of discretion. *Seymour*, 2015 IL 118432, ¶ 48. However, "where the exercise of that discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows *** that we review that ruling *de novo*." *Id*. ¶ 49. Here, in applying federal cases to the judicial estoppel analysis and finding that to allow Bourbon to pursue its claim "is exactly the conduct intended to be addressed by *** judicial estoppel," the

court exercised its discretion. Yet, the court's ruling also terminated the litigation as to Bourbon's claims against Pepper, suggesting that our review is *de novo*.

¶ 66    Importantly, judicial estoppel applies to statements of fact and not to legal opinions or conclusions. *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 949 (2010). See also *United Auto Insurance Co. v. Buckley*, 2011 IL App (1st) 103666, ¶ 36 (judicial estoppel does not apply to alleged legal inconsistencies). This principle has not always been consistently followed. Some older and federal cases have applied judicial estoppel to inconsistent legal positions. See *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990) ("in this case we think that the change of position on the legal question is every bit as harmful to the administration of justice as a change on an issue of fact"); *Johnson v. Du Page Airport Authority*, 268 Ill. App. 3d 409, 416 (1994) (stating that judicial estoppel prohibits parties from "adopting inconsistent legal positions in separate proceedings"). However, our supreme court in *People v. Jones*, 223 Ill. 2d 569, 598 (2006), stated that judicial estoppel did not apply to positions that were "merely legally inconsistent." Subsequently, the Second District noted that *Jones* restored "the original understanding of judicial estoppel as barring factual inconsistencies, not legal inconsistencies." *McNamee v. Sandore*, 373 Ill. App. 3d 636, 650 (2007) (finding that judicial estoppel did not apply to allegation that a party was an agent or apparent agent of an entity because an assertion that an agency relationship exists between parties is a legal conclusion).

¶ 67    Following this principle, judicial estoppel should not have been applied to either party because each sought to bar the other from contesting liability, which is a legal conclusion. See *Illinois Insurance Guaranty Fund v. Liberty Mutual Insurance Co.*, 2013 IL App (1st) 123345, ¶ 22 (allegation that entities were jointly and severally liable was legal conclusion); *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 924-25 (1992) (assertion that one party was liable to

another was a legal conclusion). Bourbon supposedly took the position at arbitration that Palmolive was responsible for its damages, and in the circuit court asserted that Pepper was liable for its damages. Changing which entity is liable is a legal inconsistency to which judicial estoppel does not apply. Similarly, Pepper supposedly embraced Bourbon's claim for damages at arbitration, but denied liability in the circuit court. This too is a legal inconsistency. Because the court improperly applied judicial estoppel to bar Bourbon's legal conclusion that Pepper was liable for its damages, we reverse the court's grant of summary judgment to Pepper on this issue. By the same token, Bourbon could not invoke judicial estoppel to bar Pepper from contesting its liability to Bourbon.

¶ 68    Above, we used the word "supposedly" to describe the parties because it is unclear exactly what the parties' positions were on liability at arbitration. This is an additional reason that judicial estoppel does not apply, even putting aside that the parties' assertions were legal conclusions. For judicial estoppel to apply, the two positions must be totally inconsistent—the truth of one must necessarily preclude the truth of the other. *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 510 (1983). Here, the parties have failed to show that the positions were totally inconsistent because it is unclear what their positions on liability were at arbitration. As for Bourbon, it is unclear whether it asserted that Palmolive was completely responsible for its damages to the total exclusion of Pepper. Elliott testified that he was not asked to determine how much of Bourbon's damages were either Pepper or Palmolive's responsibility. Lloyd's declaration, submitted to the arbitrators, stated that Bourbon had additional claims that were not presented at arbitration.

¶ 69    Meanwhile, Pepper appears to have gone to some effort at arbitration to ensure it did not take a position on Bourbon's damages. At best, Pepper allowed Bourbon to present damages at

arbitration based on conditional liability, as expressed in *Paschen Contractors, Inc.*, 353 Ill. App. 3d 628. Pepper's responses to Bourbon's requests to admit do not resolve whether Pepper claimed responsibility for Bourbon's damages. Bourbon asserts that if the court had correctly applied Illinois Supreme Court Rule 216 (eff. Jan. 1, 2011) to Pepper's evasive responses to the requests to admit, judicial estoppel would have applied to Pepper and not Bourbon. However, none of the requests to admit at issue−13, 19, and 20−conclusively state that Pepper asserted at arbitration that it was liable for Bourbon's damages. Only Pepper's response to request 20 addresses Bourbon's claim, but only states that "Pepper claimed it was entitled to an arbitration award, which included Bourbon's Pass Through Claim." This statement does not state whether Pepper claimed it was responsible for that claim, or was merely presenting it to the arbitrators on Bourbon's behalf.

¶ 70    Because it is unclear what each party's stance on liability was at arbitration, there was an issue of material fact whether the positions were truly inconsistent. Additionally, the assertion that was barred was a legal conclusion to which judicial estoppel does not apply. As a result, the court improperly granted summary judgment to Pepper on the issue of judicial estoppel. We also reject Bourbon's argument that judicial estoppel should be applied to Pepper.

¶ 71                              B. *Res Judicata*, Collateral Estoppel, and the JILA

¶ 72    Pepper provides three other potential grounds for barring Bourbon's claims−*res judicata*, collateral estoppel, and the JILA. We consider each in turn. In seeking to apply *res judicata*, Pepper asserts that the arbitration award and judgment confirming the award constituted a final judgment on the merits, Bourbon and Pepper were in privity at arbitration, and the arbitration and Bourbon's counterclaim arose out of the same set of operative facts. Pepper argues that the

arbitration and circuit court proceeding emanate from the same project and states that Bourbon sought relief for the same injury as it sought at arbitration.

¶ 73    "The doctrine of *res judicata* provides that a final judgment [from] a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action [that involves] the same claim, demand, or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). If *res judicata* applies, the former judgment bars both questions that were actually decided and those that might properly have been litigated. *Peregrine Financial Group, Inc. v. Martinez*, 305 Ill. App. 3d 571, 579 (1999). For *res judicata* to apply, three requirements must be met: (1) the second suit is based on the same claim, demand, or cause of action as the first suit; (2) both cases involve the same parties or their privies; and (3) the first case was decided on the merits by a tribunal of competent jurisdiction. *Taylor v. Peoples Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 663 (1995). "Generally, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments." *Peregrine Financial Group, Inc.*, 305 Ill. App. 3d at 578.

¶ 74    As to the first requirement, we use the transactional test (*River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310 (1998)), which provides that the assertion of different kinds or theories of relief constitutes a single cause of action if a single group of operative facts gives rise to the assertion of relief (*Nowak*, 197 Ill. 2d at 391-92). Here, the causes of action are different because Bourbon's breach of contract claim was based on different key facts than were at issue at arbitration. As the court found, Bourbon's claims were based on its subcontract with Pepper. Bourbon's breach of contract claim focuses squarely on Bourbon's relationship to Pepper and whether Pepper breached its obligations to Bourbon under the subcontract. The subcontract was not part of the arbitration, and, moreover, the arbitration did not consider the

obligations between Pepper and Bourbon. Indeed, in their second interim award, the arbitrators agreed with Lloyd's statements that Bourbon had no claims pending before the arbitrators, that Lloyd had assisted Pepper with presenting a portion of Pepper's claims that related to Bourbon's work, and that Bourbon was not a party to the arbitration. The arbitrators even declined to allocate backcharges among Pepper and the subcontractors, stating that the arbitrators did not have jurisdiction to determine disputes between them. Bourbon's particular disputes with Pepper were not decided at arbitration and could not have been. Because the claims derive from different operative facts, the trial court correctly concluded that *res judicata* does not apply.

¶ 75    We also find that collateral estoppel does not bar Bourbon's claims against Pepper. Pepper notes that in finding that collateral estoppel did not apply, the court relied on *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 21-22 (1992), where a critical inquiry was whether a party had the capacity to control the determination of the subject issue in the first proceeding. Pepper contends that Bourbon had the capacity to control the determination of its pass-through claim in the arbitration and states that under the JILA, Bourbon had the responsibility to prove both its entitlement and quantification of its claim. Addressing another consideration from *Cirro*, Pepper further argues that Bourbon and Pepper were adversaries because Pepper had sued Bourbon and others in a mechanics lien foreclosure action and Bourbon had countersued Pepper to foreclose its mechanics lien claim.

¶ 76    Collateral estoppel precludes relitigation of an issue that has been fairly, completely, and necessarily resolved in a prior proceeding. *Taylor*, 275 Ill. App. 3d at 660. Three requirements must be met to apply collateral estoppel: (1) the issue decided in the prior proceeding is identical with the one presented in the current action; (2) there was a final judgment on the merits in the prior proceeding; and (3) the party against whom estoppel is asserted was a party to, or in privity

with a party to, the prior proceeding. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). Even where the threshold elements of collateral estoppel are satisfied, the doctrine should not be applied to preclude a party's claims or defenses unless it is clear that no unfairness results to the party being estopped. *Nowak*, 197 Ill. 2d at 391. A court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present its case. *Id*. Further, as a reviewing court, we have a duty to "study the record to determine whether the trier of fact in the prior adjudication could have based its decision, verdict[,] or judgment upon a matter other than that which the party asserting collateral estoppel attempts to preclude from consideration in the subsequent action." *Peregrine Financial Group, Inc.*, 305 Ill. App. 3d at 581-82. The party claiming collateral estoppel must establish it by clear, concise, and unequivocal evidence. *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42.

¶ 77    In finding that collateral estoppel does not apply, we are persuaded by the considerations for coparties that our supreme court articulated in *Cirro Wrecking Co.*, 153 Ill. 2d 6. The supreme court stated that although generally, the alignment of parties on the same side in the initial suit is immaterial, collateral estoppel does not apply where the coparties "were not true adversaries in the prior action." *Id*. at 20-21. Where the two parties were codefendants in the first suit, "the only rights adjudicated [were] those of the plaintiff as against each defendant, not the rights of the defendants as between each other." *Id*. at 21. The court further stated that "[t]he critical inquiry is whether the co-party against whom estoppel is sought in the subsequent action enjoyed the capacity to control the determination of the subject issue in the initial suit so that it would be fair to preclude relitigation of the issue in the subsequent action." *Id*. at 21-22.

¶ 78    Here, the record indicates that Pepper and Bourbon were not true adversaries in the arbitration. The arbitration demand indicated that the subcontractors were joining Pepper against Palmolive. The arbitrators stated that counsel for the subcontractors "simply [served] as co-counsel to Pepper" to help Pepper present the pass-through claims. Additionally, as noted above, the award did not resolve disputes between Pepper and Bourbon, as the arbitrators stated they did not have jurisdiction to determine disputes between Pepper and the subcontractors.

¶ 79    Further, the record suggests that Bourbon did not have the capacity to control its claims such that it would be fair to preclude them in the circuit court. We acknowledge that Bourbon retained its own expert to quantify its claim and Lloyd examined two witnesses and cross-examined Palmolive's expert. However, per the arbitrators' February 2008 order, the subcontractors were not permitted to ask questions at depositions. Moreover, the arbitrators agreed with Lloyd's statement that if Bourbon had been a party, its presentation of proof on its behalf would have been "significantly different." Because Pepper and Bourbon were not true adversaries at arbitration and there are questions about the extent of Bourbon's control over its claim, we decline to preclude Bourbon from pursuing its claims against Pepper in the circuit court. The circuit court correctly found that collateral estoppel did not apply.

¶ 80    As its last argument to preclude Bourbon's claims, Pepper turns to the JILA. Pepper asserts that the JILA is a valid agreement, Bourbon was a party to the JILA, and the terms of the JILA bar Bourbon from seeking from Pepper any more damages than Bourbon was awarded at arbitration.

¶ 81    We will not decide whether the JILA bars Bourbon's claims because the circuit court did not rule on this issue. We note that Pepper only challenges the court's refusal to rule on the JILA after trial, and not its findings about the JILA at the summary judgment stage. At the end of trial,

the court declined to rule on "issues related to Bourbon Marble's obligations under the JILA," and denied Pepper's subsequent request to decide whether the JILA was valid and enforceable against Bourbon. We decline to address this question as well. Whether a contract exists, its terms, and the parties' intent are questions of fact to be determined by the trier of fact. *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 205 (2007). Further, our function is to review rulings and judgments of the circuit courts and generally we will not pass on any question as to which the circuit court failed to make a decision. *In re Marriage of Bennett*, 225 Ill. App. 3d 828, 830 (1992). Additionally, we will not consider issues that the trial court refused to decide unless we are asked to decide whether the refusal to act was an abuse of judicial discretion (*Board of Education of the City of Chicago v. Chicago Teachers Union, Local 1*, 26 Ill. App. 3d 806, 813 (1975)), which we have not been asked to do. Based on the trial court's refusal to decide the effect of the JILA, we will not decide this issue either.

¶ 82                    C. Shower Floor Damages and Backcharges

¶ 83    We next address the parties' contentions about the trial. Pepper contends that the court incorrectly granted Bourbon's motion for a directed verdict on Pepper's claim for damages for the shower floor judgment. Pepper argues that Illinois law requires a reduction in the subcontract price for the defective shower floors and that article 18 of the subcontract obligated Bourbon to hold Pepper harmless from the judgment suffered by Pepper. Pepper also asserts that it suffered a real loss as a result of the shower floor judgment, as the net amount due to Pepper was the starting point for settlement negotiations and Pepper received a reduced recovery.

¶ 84    At the close of Pepper's evidence, Bourbon moved for a directed finding pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2012)). When ruling

on a directed finding, the trial court employs a two-step analysis. *Minch v. George*, 395 Ill. App. 3d 390, 398 (2009). First, the court determines whether the plaintiffs have established each element of a *prima facie* case, and if the plaintiff has not done so, the trial court directs a finding in the defendant's favor. *Illinois Health Care Ass'n v. Wright*, 268 Ill. App. 3d 988, 994 (1994). If the plaintiffs have established a *prima facie* case, then the court conducts the second step of the analysis and considers the weight and quality of all the evidence. *Id*. If, as here, the court finds at the first step that the plaintiff failed to present a *prima facie* case as a matter of law, our review is *de novo*. *Minch*, 395 Ill. App. 3d at 398.

¶ 85 Pepper asserted a breach of contract claim for the shower floor judgment. The essential elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. Here, the key question is whether Pepper established the fourth element—an injury resulting from Bourbon's allegedly defective installation of the shower floors. The award to Palmolive for the shower floors was confirmed by the circuit court in the amount of $450,372.08. Yet, Pepper failed to prove in its *prima facie* case that it was ever injured by this judgment because there was no evidence that it ever had to pay the approximately $450,000 to Palmolive. To be sure, the circuit court confirmed the judgment for Pepper for approximately $35 million, and Pepper and Palmolive entered into a global settlement agreement wherein Pepper received approximately $21 million. However, Wendy Klein Keane testified that Pepper did not pay any money to Palmolive, and there were no side agreements to the global settlement agreement. Keane further stated that Palmolive gave up its judgment against Pepper when the parties signed the agreement. There was no evidence in global settlement agreement itself that Pepper paid the shower floor judgment to Palmolive. Pepper asks

this court to infer that Pepper received less in settlement because of the shower floor judgment, and that the settlement between Palmolive and Pepper included the shower floor judgment. However, the "[t]he basic theory of damages in a breach of contract action requires that a plaintiff establish an actual loss or measurable damages resulting from the breach in order to recover." (Internal quotation marks omitted.) *In re Illinois Bell Telephone Link-Up II & Late Charge Litigation* , 2013 IL App (1st) 113349, ¶ 19. Pepper's request for an inference amounts to evidence that is too " 'remote, speculative, or uncertain' " (*id.* ¶ 23 (quoting *Doornbo Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 485 (2010))) to constitute sufficient proof of damages.

¶ 86    Further, contrary to Pepper's suggestion, Pepper does not have an absolute right to payment from Bourbon without proof of an actual loss. Article 18 of the parties' subcontract required Bourbon to hold Pepper harmless from judgments, but because Pepper never had to actually pay the shower floor judgment, there was nothing to hold Pepper harmless from. Additionally, we are unpersuaded by Pepper's reliance on *Watson Lumber Co. v. Guennewig*, 79 Ill. App. 2d 377 (1967). There, in a dispute between a contractor and a customer, the court found that the contractor was not entitled to a judgment that consisted of the full contract balance where there was "less than full performance." *Watson*, 79 Ill. App. 2d at 396. Pepper attempts to place itself in the shoes of the customer in *Watson*, who did not have to pay full price for defective work, but this analogy fails. Here, unlike the customer in *Watson*, Pepper does not face the possibility of paying for defective work because that judgment was given up by Palmolive. Further, the situation here involves numerous other factors, including an arbitration proceeding and subsequent settlement agreement with a third party. In sum, we agree with the trial court's

conclusion that Bourbon was entitled to a directed finding on Pepper's claim for the shower floor judgment.

¶ 87    Bourbon also raises a challenge to the trial, contending that the judgment should be reversed because it was based on the trial court's failure to enforce Illinois Supreme Court Rule 216 (eff. Jan. 1, 2011). Bourbon contends that the trial court disregarded Pepper's judicial admissions that it owed Bourbon $3,185,234 and that this amount reflected Pepper's unilateral deduction of $55,031 in backcharges. Bourbon states that the court treated the relevant statements as evidentiary admissions and improperly allowed evidence of backcharges and damages calculations. Bourbon argues that because the trial court did not off-set the backcharge amount from the amount that Pepper admittedly owed Bourbon, Pepper received the benefit of reducing the amount it admitted it owed to Bourbon during arbitration and seeking a judgment for the same amount at trial. Bourbon asserts that the court relied on evidence it allowed Pepper to introduce to explain away the judicial admission that Pepper claimed the arbitrators made the deductions but charged them against Pepper's claims, even though pursuant to request 18, Pepper admitted there were no claims before the arbitrators other than its own.

¶ 88    As a preliminary matter, Bourbon also asserts that Pepper has conceded this argument because Pepper's brief did not respond to it. We disagree. In its brief, Pepper defended its interpretation of the requests to admit and contends that evidence about backcharges due either to Pepper or Bourbon was not presented to the arbitrators. Pepper did not ignore Bourbon's argument entirely, such that we would consider Pepper's position equivalent to not filing a brief at all. See *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1088 (1995) ("When an appellee does not address arguments in her brief, her position should be equivalent to that as if she had not filed a brief at all."). Further, even if Pepper had not responded at all, we could still address the merits

of Bourbon's argument. See *People v. Bailey*, 375 Ill. App. 3d 1055, 1068-69 (2007), *aff'd*, 232 Ill. 2d 285 (2009) (addressing defendant's argument even though "[w]e would normally treat the State's silence as acquiescence to defendant's argument").

¶ 89   An admission is substantive evidence admissible as an exception to the rule against hearsay. *North Shore Community Bank & Trust Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 115. A threshold question is whether Pepper's responses to the requests to admit were evidentiary or judicial admissions. The difference between the two is that while a party may contradict or explain an ordinary evidentiary admission, judicial admissions conclusively bind a party. *Id*. "Judicial admissions are formal admissions in the pleadings that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Serrano v. Rotman*, 406 Ill. App. 3d 900, 907 (2011). Further, judicial admissions are defined as "deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009). A statement is not a judicial admission if it is a matter of opinion, estimate, appearance, inference, or uncertain summary. *Id*.

¶ 90   The standard of review is unsettled. Courts have used both the *de novo* and abuse of discretion standards in deciding whether a statement is a judicial admission. See *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶¶ 46-47. The *de novo* standard of review comes from the requirement that a judicial admission must be a "deliberate, clear, unequivocal statement of a part about a concrete fact within that party's knowledge" and is based on the determination that the question of whether the statement is equivocal is a question of law and not fact. (Internal quotation marks omitted.) *North Shore Community Bank & Trust Co.*, 2014 IL App (1st) 123784, ¶ 117. The abuse of discretion standard focuses on the context of the judicial admission, finding that "[w]hat constitutes a judicial admission must be decided

under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found." (Internal quotation marks omitted.) *Id*. ¶ 118 (quoting *Serrano*, 406 Ill. App. 3d at 907).

¶ 91 Cases applying either standard agree on the same basic framework to determine whether a statement is a judicial admission. *Crittenden*, 2012 IL App (1st) 112437, ¶ 48. A case applying the abuse of discretion standard still requires the statement to be " 'clear, unequivocal, and uniquely within the party's personal knowledge,' " and a case applying *de novo* review also looks at the context of the statement. *Id*. (quoting *Serrano*, 406 Ill. App. 3d at 907). Here, under either standard of review, we affirm the trial court's rulings on Pepper's responses to the requests admit.

¶ 92 Bourbon challenges the court's treatment of the responses to requests 18 and 20. Request 18 states:

"18. In [Pepper] Construction Company's Legal Brief (dated on or about December 14, 2009) in the arbitration, Pepper stated:

'Finally, the Panel has asked to what extent the Panel has jurisdiction to rule on the issues between Pepper and its Pass Through Subcontractors. Such issues are not before the Panel, nor has Pepper proffered any evidence regarding any such issues. The Panel only has jurisdiction to determine issues between Pepper and Palmolive.'

RESPONSE: Admitted."

In request 19, Pepper admitted that its statement in request 18 was accurate, true, and correct. Request 20 states:

"20. In Exhibit A attached to Pepper Construction Company's Legal Brief (dated on or about December 14, 2009) in the Arbitration, Pepper claimed it was entitled to an arbitration award which included $2,295,620 for Bourbon's 'Specific Losses', $532,649 for Bourbon's 'Changed Conditions', $162,617 for Bourbon's 'Other Additional Costs', and $264,162 for 'Pre-Judgment Interest' which, after deductions for backcharges and adjustments, totaled $3,185,234.

RESPONSE: It is admitted only that Pepper claimed that it was entitled to an arbitration award, which included Bourbon's Pass Through Claim under and subject to the terms of the Joint Interest and Liquidating Agreement, which consisted of $2,295,620 for Bourbon's 'Specific Losses', $532,649 for Bourbon's 'Changed Conditions', $162,617 for Bourbon's 'Other Additional Costs', and $264,162 for 'Pre-Judgment Interest' which, after deductions for backcharges ($55,031) and adjustments ($14,783), totaled $3,185,234. All remaining allegations are denied."

¶ 93    Requests 18 and 20 were raised in Bourbon's motion *in limine*, where Bourbon contended that Pepper judicially admitted that Bourbon was entitled to $3,185,234 and that Pepper had already assessed Bourbon backcharges before submitting anything to the arbitrators. Bourbon sought to prevent Pepper from introducing evidence that would controvert or contradict these purported judicial admissions. The court declined to "interpret the meaning of these admissions in the broad context of the case" and decided to "see how it comes up." During Brian Peter's testimony, when Bourbon objected and stated that the amount of the backcharges had

been incorporated in the request to admit, the court allowed Pepper to prove its entitlement to $55,031 in backcharges. During Wendy Klein Keane's testimony, Bourbon again objected to testimony about whether Pepper adopted Bourbon's pass-through claim, and the court overruled it, stating that Bourbon had a different interpretation of the effect of the admission.

¶ 94    Although the court did not state whether it deemed the responses evidentiary or judicial admissions, we agree with the court's decision to allow further evidence on backcharges and damages calculations.  We note that "[w]e may affirm the judgment of the trial court on any basis in the record, regardless of whether the trial court relied upon that basis or whether the trial court's reasoning was correct." (Internal quotation marks omitted.) *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 25. Request 18 states that no issues between Pepper and Bourbon were before the arbitrators and the arbitrators only had jurisdiction to determine issues between Pepper and Palmolive. Even if request 18 was a judicial admission that no issues between Pepper and Bourbon were between the arbitrators, this admission did not address Pepper's entitlement to backcharges or any other issues between Pepper and Bourbon. Judicial admissions can be limited in scope. See *Rath v. Carbondale Nursing & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 536, 539 (2007) (even though the defendant admitted negligence, plaintiff was entitled to present evidence about the course of care and treatment because it was necessary for an understanding of the plaintiff's claim, and because admissions concerned a limited period of time). Request 18 did not prevent Pepper from presenting evidence about backcharges and the amount it was owed.

¶ 95    As for request 20, it is an evidentiary admission. Pepper's response to request 20 lists the various components of Bourbon's pass-through claim, which totaled $3,185,234 "after deductions for backcharges ($55,031)." Pepper's response did not reveal whether the arbitrators

ultimately deducted $55,031 from Pepper's or Bourbon's award. Pepper's response also does not make clear whether Pepper actually agreed that Bourbon was entitled to $3,185,234, or whether Pepper was merely presenting Bourbon's claim. A judicial admission is an intentional statement that relates to concrete facts and cannot be an inference or unclear summary. *Serrano*, 406 Ill. App. 3d at 907. Pepper's response to request 20 is an unclear summary. Further, the court would have to make inferences to reach the conclusions that the arbitrators deducted the backcharges and that Pepper admitted that Bourbon was entitled to $3,185,234. Because request 20 is an evidentiary admission, Pepper was properly allowed to introduce additional evidence to explain it.

¶ 96                                    D. Fees

¶ 97    Pepper and Bourbon also challenge the court's refusal to find either party as the prevailing party and award attorney fees. However, because our reversal of the summary judgment ruling on the basis of judicial estoppel will require further proceedings, a ruling on prevailing party status and fees would be premature. The trial court's denial of Bourbon's and Pepper's petitions for prevailing party status and fees is affirmed, but we do not preclude the parties from raising this issue after the final disposition of this case in the trial court. See *Jewish Hospital of St. Louis v. Boatmen's National Bank of Bellville*, 261 Ill. App. 3d 750, 770 (1994).

¶ 98    Lastly, Bourbon appears to fault the trial court for failing to impose Rule 216 sanctions on Pepper's responses to the requests to admit once the trial court reconsidered its ruling and deemed requests 13 and 19 judicial admissions. Because Bourbon does not support this contention with any citation to authority or other support as required by Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013), this argument is waived. See *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 36.

¶ 99                                    III. CONCLUSION

¶ 100   For the foregoing reasons, we reverse the court's grant of partial summary judgment to Pepper based on judicial estoppel, affirm the court's *res judicata* and collateral estoppel rulings, affirm the court's March 17, 2014 judgment, and affirm the court's denial of Bourbon's petition for fees and Pepper's motion for a finding that it was the prevailing party. The cause is remanded for further proceedings.

¶ 101   Affirmed in part; reversed and remanded in part.